UNITED STATES DISTRICT COURT
CIVIL DIVISION
333 CONSTITUTION AVENUE, NW
WASHINGTON, DC 20001

---------------------------------------------X   DATED: February 29, 2008
**THERESA SMALL SMITH**
        Plaintiff,   USDC Civil Docket No. 07cv2217
           Judge: Paul L. Friedman
   V.

**HOLLY SHIMIZU**   MOTION IN OPPOSITION
c/o Botanical Gardens   TO DEFENDANT'S MOTION
350 1st Street, SW   TO DISMISS, MOTION FOR
Washington, DC   PRELIMINARY INJUNCTION
    And MOTION FOR SEARCH
**ELIZABETH SMYTH**        WARRANTS        .
c/o Smith Castle/Smithsonian
1100 Jefferson Drive, SW
Washington, DC

**PRUDENCE FRASER**
c/o Capitol City Brewery
1-2 Massachusettes Avenue, NE
Washington, DC 20001
        Defendants.
---------------------------------------------X

I, Theresa Small Smith, Plaintiff in the above captioned action do hereby request the United States District Court to Deny the Defendant's Motion to Dismiss this case and to grant Plaintiff Motion for Preliminary Injunction Pursuant to Article I, Section 8, Clause 1; Article I, Section 9, Clause 7 FRCP for a preliminary ORDER freezing all of Defendant's assets and enjoining Defendant's from further withdrawing any assets from accounts associated with the addresses listed in complaint; and to grant Plaintiff's Motion for a Search Warrant as Defendant's are illegally breaking into files, computer systems, mail, etc. *See People v Johnson* (44 AD2d 451 [1st Dept 1974], *affd* 36 NY2d 864 [1975]) in which the Court held that a district court may issue a search warrant to be executed anywhere in the State (CPL 690.20[1]).

RECEIVED
FEB 29 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

**PLAINTIFF'S REASONS FOR REQUESTING
THE COURTS TO DENY DEFENDANT'S
MOTION TO DISMISS,
MOTION FOR PRELIMINARY INJUNCTION
AND MOTION FOR SEARCH WARRANTS**

*I. Confidentiality* in computer systems prevents the disclosure of information to unauthorized persons. Individuals who trespass into another person's computer system or exceed their own authority in accessing certain information, violate the legitimate owner's right to keep private information secret. Crimes that violate the confidentiality of computer systems include "unauthorized access crimes" as defined by Title 18, U.S.C. Section 1030(a)(2). Because breaking into a computer begins with unauthorized access to an information system, many believe this represents the foundational computer crime offense. *See, US v. Andrew Smyth, Superior Court Criminal Court View Records for illegal wire tapping, computer hacking; US v. Pierre Smythe, Superior Court Criminal Court View Records for internet fraud; Also see Albert H. Small, Robert H. Smith, et. Al. v. Kajima Development Corp, Docket No. 94-1817 USDC; and The People of the State of NY v. Fraser, Supreme Court, 1990.*

**In the Matter of Property at 350 1st Street, SW currently occupied by Holly Shimizu aka Botanical Gardens**

1. In 1994 properties belonging to Plaintiff's relatives Albert H. Small and Robert H. Smith were illegally broken into and an oil tank was cut into causing a significant spill which cause significant damage to the property. My relatives reported it to the then DC Police Dept. and DC Fire Dept. (unfortunately reports were destroyed according to Clerk in Police Headquarters at 500 Indiana Avenue, NW, "they do not keep police reports from that time."). Plaintiff's relatives were force to sue defendant's relatives i.e., Tsuneyoshi Shimizu for damages. *See, Docket No. 94-1817, United States District Court filed in Suitland, MD. Wherein the record cites Defendants, Kajima, Cafritz and KYA Development Corps. for Trespass. Defendants recklessly and negligently entered plaintiff's property and willfully failed to comply with orders of the court of 1995. These reckless, negligent willful acts caused an invasion of Plaintiff's exclusive interest in the possession of land constituting trespass. The actions of the Defendants constituting trespass were willful, wanton and reckless. This court has jurisdiction over this matter pursuant to 28 USC §1331 in that the action involves a federal question arising under the Resource Conservation and*

*Recovery Act, 42 USC §§6901-6992K. This court has jurisdiction over this matter pursuant to 28 USC §1332 in that the action involves a controversy between citizens of different states with the amount in controversy being in excess of $50,000.00. Venue lies in this judicial district pursuant to 28 USC §139(a) in that a substantial part of the events giving rise to this claim occurred or is occurring within this judicial district. Defendant is a person who is alleged to be in violation of DC Law §8-325, Sec. 12.*

2. Defendant Holly H. Shimizu aka Botanical Gardens is retaliating against Plaintiff and in plotting a conspiracy to take Plaintiff's property and Plaintiff's family property and forcing them into homelessness by use of tactics that were used in 1994, i.e., false documentation, false impersonation, trespass, willful and deliberate intent, and conspiracy.

3. It is a conspiracy when the Defendants conspire to take over property, assets, etc. of their victims who won settlements against them for the wrongs or injuries cause them in the past. Under the Resource Conservation and Recovery Act, 42 USC §§6901-6992K, Defendant's committed a violation under the law and is now supposedly in charge of a Botanical Gardens?

4. The property was share with Plaintiff's Aunt and her family whose house was on the grounds adjacent to the property at 350 1st Street and entrance to Botanical Gardens, SW covering the areas of 4th Street from Independence Ave, SW and Capitol Circle, SW, which is private property and was standing as of 2007. It was torn down after Rosa Parks supposed memorial service. *See Property Document records filed with Property Documents Office, Reeves Center and IRS records.*

5. The computers and files contained sensitive, personal, professional and international trade information belonging to Plaintiff that is being utilized by Defendant's whose intent is to conspire against Plaintiff, Plaintiff relatives, associates and clients, domestic and international. *See, FDA files on Pencillin, Hydroquinone and Sensory and Pencillin, Myocin and Sensory.* Plaintiff and Plaintiff's family also have relatives in the Pharmaceutical Industry, Small Pharmaceuticals, who lived on Virginia Ave, NW opposite the State Dept. whose property is now demolished and the research was being conducted on the premises at 350 1st Street, SW. The typewritten formulas and other research was contained in the computers and files on this location.

6. Plaintiff's automobiles, equipment, client information, addresses, phone numbers, bank accounts, credit card information, etc. was on property as the Garage was below ground. There was also a bunker and emergency supplies stored underground as well.

7. Plaintiff's uncle had created a sculpture, a replica of the Smith Castle, the Washington Monument, a Eurorail, Europe's Big Clock, Ben out of leaves which has since been destroyed. Plaintiff's relatives that lives on this property while Plaintiff travelled or stayed in California are MIA.
8. Albert H. Small and Robert H. Smith, Plaintiff''s relatives cited in the 1994 action against T. Shimizu of KYA/Kajima Dev. Corp. are also MIA. Albert H. Small is the owner of the property currently listed as government property aka the Holocaust Museum. This was a private collection of Holocaust survivors from their personal photo album that was dedicated to the memory of their ancestors, the ancestors of their clients, presidents, etc who were colleagues and relatives as well. *See Reeves Center files on Albert H. Small and Lillian Small private property.*
9. Defendant's attorney stated in Motion to Dismiss, that Elizabeth Smyth is now not a government defendant, but that Holly Shimizu is and offers a type written certification to state that they put her into that position. All government employees are required to fill out an application for a position and it is approved through the Office of Personnel Management. *See Rule 26(1)(B) and (D) Disclosure of Documents by Defendant, Federal Rules of Civil Procedure – Results of Title Search on property, data relating to sub subsurface conditions, documents relating to ownership of the property, insurance agreements correspondence with other parties.*

**In the Matter of Smith Castle at 1100 Jefferson Drive, SW**
**Elizabeth Smyth**
**Aka Smithsonian Institute/Museum**
**Including properties on grounds listed as**
**African Art Museum/African-American Art Museum**
**Sackler Museum, Archives, etc.**

1. In 1993, the Smith family had a Supreme Court case against The Smyth/Smythe Families which included Andrew Smyth and Pierre Smythe where the Smith family sued the Defendant's for false impersonation, false documentation, as they had prefabricated documents from Poland claiming to be our relatives and that Smyth, pronounced Smith, was a descendant of our Great Grandfather's James E. Smith, John E. Smith, Architects and Developers of the Smith Castle, including property at Florida Ave., NW aka Galladet University. The courts had found in favor of the Plaintiff's Smith family and had proven that these documents and this information was prefabricated, false. Since that time we have been subjected to fires,

destruction of property, illegal take overs of property, i.e., The Smith/Smithsonian Zoo, and the Smithsonian Magazine. The Plaintiff's relatives responsible for the operation of these properties are also MIA.

2. On google.com the website listed as Sin-Jin Smyth, currently into Devil worshipping, is a relative of theirs who was cited by the DC Police Dept. in 1983 for criminal impersonation of a police officer and aiding and abetting a known felon, Caryn and Karen Moultrie, indicted for Manslaughter. *See Google.com for records of Sin-Jin Smyth and others and Criminal Court View Records for US v. Karen Moultrie. Records on Caryn Moultrie have since been sealed as of 2007.*

3. In the NYS Court View Files in the Supreme Court the Smithsonian Institute is listed under 8th JD Law Library as the Nations Attic holds some 140 artifacts and specimens comprised of 16 museums and galleries including the National Zoo. *See NY courts.gov/library buffalo/legalsites.html; also and US v. Smyth, NYS Supreme Court.*

4. Plaintiff is relative also to Alfred E. Smith and Plaintiff's family has been underseige and attack by these individuals because of matters that were not won by them through the courts and are retaliating and conspiring to destroy our legacy, history, family, etc. An/Ann Smyth and Smyth family are German born individual whose family members were Nazi Prison Camp Guards who are not willing to let the past war defeats go undone. She has changed everything of the Smith's, including Alfred E. Smith, portraits, sculptures, etc and list him as Alfred Emmanuel Smith, which is not his name. *See Afred Smith Properties v. Smyth.*

5. *Eizenstat, Stuart E. "US and Allied efforts to recover and restore gold and other assets stolen or hidden by Germany during World War II". Ambassadors Review(Spring 1997). (Excerpted from the report, US and Allied efforts to recover and restore gold and other assets stolen or hidden by Germany during World War II: preliminary study, May 1997). Note: This summary of the full study by State Department Historian, Dr. William Slany, presents the report's major conclusions and policy implications; identifies three phases in the actions of WWII neutrals; and, addresses the serious shortcomings in US and Allied postwar policies dealing with issues related to neutral countries, and most importantly, issues relating to the plight of Nazi victims after WWII. In conclusion, the summary calls for making records accessible in order to make the history known and to make it possible to provide justice to survivors.*

In March, 1988 Executive Order 12630 was implemented to Protect American Citizens against Property Piracy and it was restated in Executive Order of June 23, 2006.

For Immediate Release
Office of the Press Secretary
June 23, 2006

## Executive Order: Protecting the Property Rights of the American People

By the authority vested in me as President by the Constitution and the laws of the United States of America, and to strengthen the rights of the American people against the taking of their private property, it is hereby ordered as follows:

White House News

Section 1. Policy. It is the policy of the United States to protect the rights of Americans to their private property, including by limiting the taking of private property by the Federal Government to situations in which the taking is for public use, with just compensation, and for the purpose of benefiting the general public and not merely for the purpose of advancing the economic interest of private parties to be given ownership or use of the property taken.

Sec. 2. Implementation. (a) The Attorney General shall:

(i) issue instructions to the heads of departments and agencies to implement the policy set forth in section 1 of this order; and

(ii) monitor takings by departments and agencies for compliance with the policy set forth in section 1 of this order.

(b) Heads of departments and agencies shall, to the extent permitted by law:

(i) comply with instructions issued under subsection (a)(i); and

(ii) provide to the Attorney General such information as the Attorney General determines necessary to carry out subsection (a)(ii).

Sec. 3. Specific Exclusions. Nothing in this order shall be construed to prohibit a taking of private property by the Federal Government, that otherwise complies with applicable law, for the purpose of:

(a) public ownership or exclusive use of the property by the public, such as for a public medical facility, roadway, park, forest, governmental office building, or military reservation;

(b) projects designated for public, common carrier, public transportation, or public utility use, including those for which a fee is assessed, that serve the general public and are subject to regulation by a governmental entity;

c) conveying the property to a nongovernmental entity, such as a telecommunications or transportation common carrier, that makes the property available for use by the general public as of right;

(d) preventing or mitigating a harmful use of land that constitutes a threat to public health, safety, or the environment;

(e) acquiring abandoned property;

(f) quieting title to real property;

(g) acquiring ownership or use by a public utility;

(h) facilitating the disposal or exchange of Federal property; or

(i) meeting military, law enforcement, public safety, public transportation, or public health emergencies.

Sec. 4. General Provisions. (a) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(b) Nothing in this order shall be construed to impair or otherwise affect:

(i) authority granted by law to a department or agency or the head thereof; or

(ii) functions of the Director of the Office of Management and Budget relating to budget, administrative, or legislative proposals.

(c) This order shall be implemented in a manner consistent with Executive Order 12630 of March 15, 1988.

(d) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity against the United States, its departments, agencies, entities, officers, employees, or agents, or any other person.

GEORGE W. BUSH

THE WHITE HOUSE,

June 23, 2006.

###

**In the matter of the Property at**
**1-2 Massachusettes Avenue, NE Residents and**
**<u>The Space Aeronautic Center</u>**
**<u>Currently known as Capitol City Brewery aka</u>**
**<u>Prudence Fraser</u>**

1. The Defendant in 2006 claimed to be a Government Defendant and that this Landmark Private Property belonging to the Smith Family, was Government Property when in fact they are residing on the grounds along with their associates, who are let in during the night. (I monitor situation).
2. The Space Aeronautic Center was a private collection of airplanes used by Plaintiff's family members that were Air force personnel and left to Plaintiff. Plaintiff and relatives restructured Private Property to accommodate these planes and as the collection grew, interest from other private collectors grew as well as the interest of the public. Plaintiff's family Small Construction and Smith Developers designed an automatic ceiling which opened and allowed the one or two passenger aircrafts to be flow in.
3. Defendant Prudence Fraser and family have been targeting Plaintiff's property for decades and claiming it illegally and falsifying records, deeds, leases, etc. *See, The People of the State of NY v. Fraser, NY Supreme Court, 1990.*
4. The Property was burglarized sometime in 2006 and all planes were confiscated by burglarers and the Postal Museum was added inside with a couple of airplanes left. I reported it to Capitol Police who stated "that was not their jurisdiction." I then reported it to the Metropolitan Police Dept. who was suppose to be investigating.

**MOTION FOR PRELIMINARY INJUNCTION**

*1.* Based upon the information provided above to the court I respectfully request the Court to Grant my Motion for Preliminary Injunction against the Defendant pursuant to the standard for evaluating a motion for a preliminary injunction requires this Court to balance the likelihood of success against the hardships to the parties. A preliminary injunction is appropriate when a plaintiff demonstrates either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor. *See Lands Council v. Martin, 479 F.3d 636, 639 (9th Cir. 2007).* These two formulations are not different tests, but merely extremes on a single continuum: "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships

tip in their favor." *See Voter registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam).* Alternatively, the Ninth Circuit has stated the traditional test as requiring a plaintiff to establish "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest." *See Taylor v. Westly, 488 F.3d 1197, 1200 (9th Cir. 2007).*

2. Contrary to the government's argument, this case is justifiable because the plaintiffs have standing and the issues are ripe for review. The plaintiff has demonstrated that they will be irreparably harmed if Defendant's are permitted to enforce illegal actions that fraud Plaintiff, Plaintiff's Family and the Government. In lieu of this fact, the government would suffer significantly less harm as a result of an implementation of an expedited preliminary injunction. Because the balance of harms tips sharply in favor of the plaintiffs, a preliminary injunction is appropriate if the plaintiffs have raised serious questions on the merits of Defendant's status. In this Court's ~~opinion~~, granting plaintiffs' motion is appropriate because they have raised serious questions.

3. A preliminary injunction is a device for "preventing the irreparable loss of rights before judgment." *See Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).* Under Ninth Circuit law, a preliminary injunction is warranted when plaintiffs show "either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor." *See Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).* These are not two distinct tests, but rather "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *See Diamontiney v. Borg, 918 F.2d 793, 795 (9th Cir. 1990) (quotations and citations omitted).*

4. In addition, the "advancement of the public interest" is one of the "traditional equitable criteria for granting preliminary injunctive relief" considered by the Ninth Circuit. *See Mayweathers v. Newland, 258 F.3d 930, 938 (9th Cir. 2001) (citation omitted).* In regard to all criteria for a preliminary injunction, "[t]he district court is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved." *Sierra On-Line, Inc., 739 F.2d at 1423.* As demonstrated herein, plaintiff amply meet the standard for preliminary injunctive relief, as they are overwhelmingly likely to succeed on

the merits, they are suffering irreparable injury, and a preliminary injunction is in the public interest.

Plaintiff request the court to give opportunity to justice and grant this Motion for Preliminary Injunction for the best interest of the Plaintiff, Plaintiff's offsprings, family and the advancement of economic interest.

## MOTION FOR SEARCH WARRANTS

In the matter of the application before Judge Paul L. Friedman of the United States District Court, I hereby request a Search Warrant pursuant to CPL Section 690.15 on the Property at 350 1st Street, SW aka Botanical Gardens, Washington, DC 20001, Smith Castle at 1100 Jefferson Drive, SW, Washington, DC and 1-2 Massachusettes, NE, Washington, DC 20001 for all personal records, photos, valuables, i.e., savings bonds, formulas, birth certificates, licenses, identification, government bonds, bank accounts information belonging to Plaintiff, Plaintiff's offsprings, relatives, etc. or accounts with Plaintiff's business information, now defunct, all vehicles listed at these addresses, furniture and fixtures, including a desk in the Renwick Gallery, hand made by Albert H. Small which had Holly H. Shimizu on it as carver in May 0f 2006 which is a document file desk and was originally over at Smith Castle 1100 Jefferson Drive, SW. Vehicles with license plate numbers S375, Theresa, JES, EJS, TSS, and all vaults containing any and all personal, professional and intellectual property documents belonging to Plaintiff.

In the interest of justice, I hope that this Court grants my Motion in Opposition to Defendant's Motion in Opposition to Patrick Law Investigation, Motion to Dismiss and Plaintiff request that the Court grants my Preliminary Injunction and Motion for Search Warrant in lieu of the facts stated in this complaint 07cv2217 and the facts based on the actions of the Defendants herein. *See Smith v. Black Panther Party, Ca S.Ct. 80-1301, MGM v. Pink Panther Patrol, L.A. Sup. Ct.,1990, Jane & John Doe v. CIA, Secret Service, et al. 1:00cv2440 and Appendix A: Executive Order; Protecting the Property Rights of Americans*, appendix B+C.

Respectfully submitted this 29th Day of February, 2008 to the United States District Court by Theresa Small Smith, Plaintiff, Pro se, 425 2nd Street, NW, Wash, DC.

*Theresa Small Smith*
mstsmallsmith@yahoo.com

APPENDIX A - 07cv2217



**THE WHITE HOUSE**
PRESIDENT GEORGE W. BUSH

Home > News & Policies > June 2006

For Immediate Release
Office of the Press Secretary
June 23, 2006

## Executive Order: Protecting the Property Rights of the American People

By the authority vested in me as President by the Constitution and the laws of the United States of America, and to strengthen the rights of the American people against the taking of their private property, it is hereby ordered as follows:

Section 1. Policy. It is the policy of the United States to protect the rights of Americans to their private property, including by limiting the taking of private property by the Federal Government to situations in which the taking is for public use, with just compensation, and for the purpose of benefiting the general public and not merely for the purpose of advancing the economic interest of private parties to be given ownership or use of the property taken.

Sec. 2. Implementation. (a) The Attorney General shall:

(i) issue instructions to the heads of departments and agencies to implement the policy set forth in section 1 of this order; and

(ii) monitor takings by departments and agencies for compliance with the policy set forth in section 1 of this order.

(b) Heads of departments and agencies shall, to the extent permitted by law:

(i) comply with instructions issued under subsection (a)(i); and

(ii) provide to the Attorney General such information as the Attorney General determines necessary to carry out subsection (a)(ii).

Sec. 3. Specific Exclusions. Nothing in this order shall be construed to prohibit a taking of private property by the Federal Government, that otherwise complies with applicable law, for the purpose of:

(a) public ownership or exclusive use of the property by the public, such as for a public medical facility, roadway, park, forest, governmental office building, or military reservation;

(b) projects designated for public, common carrier, public transportation, or public utility use, including those for which a fee is assessed, that serve the general public and are subject to regulation by a governmental entity;

c) conveying the property to a nongovernmental entity, such as a telecommunications or transportation common carrier, that makes the property available for use by the general public as of right;

(d) preventing or mitigating a harmful use of land that constitutes a threat to public health, safety, or the environment;

(e) acquiring abandoned property;

(f) quieting title to real property;

(g) acquiring ownership or use by a public utility;

(h) facilitating the disposal or exchange of Federal property; or

(i) meeting military, law enforcement, public safety, public transportation, or public health emergencies.

<u>Sec. 4. General Provisions</u>. (a) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(b) Nothing in this order shall be construed to impair or otherwise affect:

(i) authority granted by law to a department or agency or the head thereof; or

(ii) functions of the Director of the Office of Management and Budget relating to budget, administrative, or legislative proposals.

(c) This order shall be implemented in a manner consistent with Executive Order 12630 of March 15, 1988.

(d) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity against the United States, its departments, agencies, entities, officers, employees, or agents, or any other person.

GEORGE W. BUSH

THE WHITE HOUSE,

June 23, 2006.

# # #

**FISCAL YEAR 2006**

# Financial Report

THE GRAND OPENING in July 2006 of the Donald W. Reynolds Center for American Art and Portraiture was a milestone in the Smithsonian's history and a defining event in fiscal year 2006. Marking the impressive rebirth of the National Portrait Gallery and the Smithsonian American Art Museum, the spectacular historic renovation of the Patent Office Building also drew attention to the Institution's all-out effort to revitalize its aging physical infrastructure.

The Smithsonian's financial health continues to improve. The Endowment's value grew substantially during the year, and the Institution's net assets increased by 7 percent, or $146 million, to a total of more than $2.2 billion, a new record high.

The Smithsonian receives funding from direct federal government appropriations, from other governmental entities, and from private sources. With private funds, the Institution undertakes new ventures and provides a critical margin of excellence for carrying out innovative research, expanding and strengthening our national collections, developing and building new facilities, opening state-of-the-art exhibitions, and reaching out to America's diverse communities. Federal appropriations conserve our national collections; sustain basic research; educate the public; operate, maintain, and protect the large Smithsonian museum and research complex; and provide other administrative and support services. The 2006 annual audit was conducted by KPMG LLP. For a complete set of audited financial statements, contact the Office of the Comptroller at (202) 633-7250.

**FY2006 REVENUE**
September 30, 2006

| | |
|---|---|
| Federal Appropriations | 64% |
| Government Grants & Contracts | 14% |
| Contributions & Private Grants | 12% |
| Investment Earnings | 6% |
| Business Ventures | 3% |
| Other | 1% |

**FY2006 EXPENSES**
September 30, 2006

| | |
|---|---|
| Salaries & Benefits | 47% |
| Other Operating Expenses | 37% |
| Capital Expenses | 16% |

**FY2006 FINANCIAL ACTIVITY**
$ Millions, September 30, 2006

| | AMOUNT | |
|---|---|---|
| | 2006 | 2005 |
| Operating Revenue | 979 | 986 |
| Operating Expenses | 880 | 805 |
| Increase in Operating Net Assets | 99 | 181 |
| Increase in Other Assets | 47 | 65 |
| Total Increase in Net Assets | 146 | 246 |

**FY2006 FINANCIAL POSITION**
$ Millions, September 30, 2006

| | Trust | Federal | TOTAL FUNDS 2006 | 2005 |
|---|---|---|---|---|
| Assets | 1,760 | 1,110 | 2,870 | 2,749 |
| Liabilities | 279 | 317 | 596 | 621 |
| Net Assets | 1,481 | 793 | 2,274 | 2,128 |

**GROWTH IN NET ASSETS**
$ Millions, 2002–2006



| 2002 | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|
| $1,595 | $1,735 | $1,882 | $2,128 | $2,274 |

24

# Gifts to the Smithsonian

**Smithsonian Business Ventures**

Smithsonian Business Ventures encompasses *Smithsonian* and *Air & Space* magazines, 30 museum stores, 13 restaurants, three IMAX theaters, and the Smithsonian Gift Catalogue. Business Ventures also includes consumer product licensing, e-commerce, and commercial media enterprises that generate unrestricted income for the Institution. In 2006, total revenues from operations were $164.4 million, representing a 4.2 percent decrease from 2005, due to a decline in museum visitation in 2006.

**Major Highlights:**

- The Institution created Smithsonian Networks, whose first venture, Smithsonian On Demand, will bring high-quality programming to millions of people worldwide via digital cable television.

- A new licensing agreement with the EF Group of Companies, an experienced domestic student tour operator, offered teacher-led tours to American students for destinations throughout the United States beginning in fall 2006.

- With July's successful opening of the Donald W. Reynolds Center, Business Ventures unveiled two retail locations and two food service facilities.

- *Smithsonian* magazine's dynamic redesign features new sections, including "Around the Mall," which groups together all Smithsonian-related content. The Magazine Group also created a stand-alone Web division to increase online advertising and better engage users.

- Smithsonian Business Ventures developed *Smithsonian Journeys* tours around one-time events to increase opportunities for experiential learning and launched its first-ever cruise catalog.

- Smithsonian Books continues to partner with HarperCollins Publishers; upcoming offerings include *Smithsonian Treasures of American History* and *After Sputnik: 50 Years of the Space Age*.

PHILANTHROPY is critical to the Smithsonian's mission. Donor gifts allow the Smithsonian to transform its museums and exhibitions, advance scientific research, ignite young minds through education and outreach, and fund innovation. Philanthropic support has never been more important to the Smithsonian, and we are most appreciative of our generous contributors.

**PURPOSE OF FUNDS RAISED**
Fiscal Year 2006

| | | |
|---|---|---|
| Construction | $ 40.4M | 29% |
| Exhibitions, Education & Public Programs | 28.3M | 21% |
| Museums & Research Centers, Unrestricted | 23.2M | 17% |
| Endowment | 18.3M | 13% |
| Smithsonian-wide, Unrestricted | 17.7M | 13% |
| Research | 6.8M | 5% |
| Acquisitions & Collections | 2.4M | 2% |
| **Total** | **$137.1M** | **100%** |

**FUNDS RAISED BY SOURCE**
Fiscal Year 2006

| | | |
|---|---|---|
| Individuals | $ 73.6M | 54% |
| Corporations | 36.3M | 26% |
| Foundations | 22.3M | 16% |
| Other | 4.9M | 4% |
| **Total** | **$ 137.1M** | **100%** |

UNITED STATES DISTRICT COURT
CIVIL DIVISION
333 CONSTITUTION AVENUE, NW
WASHINGTON, DC 20001

---------------------------------------X   DATED: February 29, 2008

THERESA SMALL SMITH
        Plaintiff,   Docket No. 07cv2217

V.

HOLLY SHIMIZU   MOTION IN OPPOSITION
c/o Botanical Gardens   TO DEFENDANT'S MOTION
350 1st Street, SW   TO DISMISS, MOTION FOR
Washington, DC   PRELIMINARY INJUNCTION
    And MOTION FOR SEARCH
ELIZABETH SMYTH         WARRANTS
c/o Smith Castle/Smithsonian
1100 Jefferson Drive, SW
Washington, DC

PRUDENCE FRASER
c/o Capitol City Brewery
1-2 Massachusettes Avenue, NE
Washington, DC 20001
        Defendants.
---------------------------------------X

I, Theresa Small Smith, Plaintiff in the above captioned action do hereby state that I have served the above named defendants in this matter 07cv2217 the above listed Motions: Motion in Opposition to Defendant's Motion to Dismiss, Motion for Preliminary Injunction and Motion for Search Warrants by regular mail February 29, 2008.

*Theresa Small Smith*
Theresa Small Smith, Pro Se

U.S. Department of Justice
United States
District of Columbia
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530

Official Business
Penalty for Private Use $300

Theresa Small Smith
425 2nd Street, N.W.
Washington, DC 20001

...uest the
...nse and
...8,
...ll of